# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL NAVARETTE, | CASE NO. CV-F-09-1255 LJO GSA |
| Plaintiff, | **ORDER ON CROSS-SUMMARY JUDGMENT MOTIONS** (Docs. 10, 11) |
| vs. | |
| ERIC HOLDER, Attorney General of the United States, DONALD RIDING, Field Office Director, Fresno Office, U.S. Citizenship and Immigration Services, | |
| Defendants. / | |

## INTRODUCTION

Plaintiff Gabriel Navarette ("Mr. Navarette") initiated this action against defendants Eric Holder, Attorney General of the United States, and Donald Riding, Field Office Director, Fresno Office, United States Citizenship and Immigration Services (collectively "USCIS") to challenge the denial of his naturalization application. Pursuant to 8 U.S.C. §1421(c), this Court reviews de novo a denial of a naturalization application. According to the statute, the Court "shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.* Notwithstanding this clear directive, the parties filed cross-motions for summary judgment on the sole issue presented: Whether Mr. Navarette has good moral character to approve his naturalization application, considering his criminal convictions and probation status. Because the issue of good moral character is a question of fact, this Court DENIES the parties' summary judgment

1

motions. In addition, the Court ORDERS Mr. Navarette's counsel to show cause why this Court should not impose sanctions for Fed. R. Civ. P. 11 violations.

## BACKGROUND

Mr. Navarette filed an application for naturalization on December 26, 2007.[1] USCIS interviewed Mr. Navarette on July 10, 2008, and denied his application on August 13, 2008. A March 20, 2009 decision by USCIS affirmed the denial of Mr. Navarette's naturalization petition. Mr. Navarette initiated this action thereafter.

USCIS denied Mr. Navarette's naturalization application for two reasons. First, USCIS found that he was ineligible to adjust status because he was on probation. Pursuant to 8 C.F.R. §316.10(c)(1):

> An applicant who has been on probation, parole, or suspended sentence during all or part of the statutory period is not thereby precluded from establishing good moral character, but such probation, parole, or suspended sentence may be considered by the Service in determining good moral character. An application will not be approved until after the probation, parole, or suspended sentence has been completed.

Mr. Navarette was on probation at the time he filed his application, and at the time of the USCIS decisions to deny his naturalization application.

Second, USCIS concluded that Mr. Navarette lacked "good moral character," based on, *inter alia*, the following facts: (1) On February 20, 2003, Mr. Navarette pled guilty to violating California Vehicle Code Section 23152(b) [Driving Under the Influence with Blood Alcohol Level Greater than 0.08 or higher] ("DUI"). Mr. Navarette was sentenced to, inter alia, 36 months probation; (2) On December 12, 2006, Mr. Navarette was convicted of another DUI. Mr. Navarette again was sentenced to, *inter alia*, 3 years probation; and (3) Mr. Navarette was on probation for almost the entire statutory period.

The March 20, 2009 decision to reaffirm the denial of the naturalization was based on the following facts and analysis:

> After a thorough review of the record and the brief submitted with the Request for Hearing, it is determined that you have not overcome the reasons for the denial of your application. During the statutory period you were twice convicted of *Driving Under the Influence*. Outside the statutory period you were convicted of *Inflicting Corporal Injury to Spouse or Cohabitant*.

---

[1] This is Mr. Navarette's second naturalization application. His first application was dismissed by USCIS for lack of prosecution.

2

> While it may be true USCIS could within the law arrive at a favorable opinion regarding good moral character, you still would be ineligible to naturalize as you are on probation. Moreover, such probation may be considered by USCIS in determining good moral character. Finally, a lack of reformation of character can also be considered.

Both the August 13, 2008 and March 20, 2009 decisions made clear that the denial of Mr. Navarette's naturalization application is "without prejudice toward the filing of a new application in the future." Thus, Mr. Navarette is free to re-file a third naturalization application.

On January 29, 2010, Mr. Navarette moved for summary judgment in his favor. USCIS cross-moved for summary judgment in its favor on February 18, 2010. Mr. Navarette responded on March 10, 2010. USCIS responded on March 18, 2010. This Court vacated the April 19, 2010 hearing by minute order and submitted the matter on the pleadings. Having considered the parties arguments and the administrative record, this Court issues the following order.

## DISCUSSION

### Introduction

A naturalization applicant bears the burden to demonstrate eligibility for naturalization. *Berenyi v. Dist. Ct., INS*, 385 U.S. 630 (1967). The parties agree that Mr. Navarette satisfies all naturalization criteria except one. "In order to obtain the privilege of naturalization, an applicant affirmatively must establish good moral character." *United States v. Hovsepian*, 359 F.3d 1144, 1158 (9th Cir. 2004) ("*Hovsepian I*") (citing 8 U.S.C. §1427(a)(3); 8 C.F.R. §316.2(b)). Accordingly, Mr. Navarette must demonstrate that he was a person of "good moral character" during the requisite residence period to be naturalized. 8 U.S.C. §1427(a)(3) ("no person...shall be naturalized, unless such applicant...during all periods referred to in this subsection has been and still is a person of good moral character.").

Mr. Navarette is eligible for citizenship if he demonstrates that, "during the five years immediately preceding the date of filing" his naturalization application, he has been and still is a person "of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C. § 1427(a). Because Mr. Navarette filed his application on December 17, 2007, he is required to demonstrate good moral character from December 17, 2002 through December 17, 2007. An applicant must maintain good moral character through the oath of citizenship. *See United States v. Dang*, 488 F.3d 1135 (9th Cir. 2007).

Good moral character is not defined in the Immigration and Naturalization Act; however, 8 U.S.C. §1101(f) provides guidance by listing nine circumstances under which a person cannot be found to have good moral character. Pursuant to the statute: "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was" a person who falls within the proscribed categories of conduct. *See e.g.*, 8 U.S.C. §1101(f)(1) ("habitual drunkard"); 8 U.S.C. §1101(f)(3) (person who commits crime of moral turpitude); 8 U.S.C. §§1101(f)(4), (5) (gambling); 8 U.S.C. 1101§(f)(8) (person who is convicted of an aggravated felony). The list of statutory bars to naturalization is non-exhaustive, as 8 U.S.C. 1101(f) further provides: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character."

Although the relevant inquiry focuses on the five-year period of time prior to the date of filing, the Court may consider conduct outside of that time period:

> In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the petition, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

8 U.S.C. §1427(e); *Hovsepian I*, 359 F.3d at 1166 (district court erred by not considering convictions that occurred prior to statutory period which, while not a per se bar to a finding of good moral character, were "highly relevant" to the good moral character inquiry); *Santamaria-Ames v. INS*, 104 F.3d 1127, 1131 (9th Cir. 1996) (conduct predating the statutory period may be considered in determining eligibility for naturalization). An "application cannot be denied based solely on [an applicant's] prior criminal record," however, "where the applicant demonstrates exemplary conduct during the specified statutory period." *Id*. at 1132. Thus, "[c]onduct occurring outside the regulatory period is relevant only insofar as it bears on [plaintiff's] *present* moral character." *United States v. Hovsepian*, 422 F.3d 883, 886 (9th Cir. 2005) (*"Hovsepian II"*) (emphasis in original) (citing 8 C.F.R. § 316.10(a)(2) (allowing earlier conduct to be considered "*if* the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character").

4

**Standard of Review**

"The key to [this Court's] present decision is the standard of review." *Hovsepian II*, 442 F.3d at 885. This Court reviews the administrative decision to deny naturalization de novo. 8 U.S.C. §§1421(c), 1447. "This grant of authority is unusual in its scope - rarely does a district court review an agency decision de novo and make its own findings of fact." *Nagahi v. INS,* 219 F.3d 1166, 1169 (10th Cir.2000) (quoted in *Abghari v. Gonzales*, 596 F. Supp.2d 1336, 1342-43 (C.D. Cal. 2009)); *Mobin v. Taylor*, 598 F. Supp. 2d 777 (E.D. Va. 2009) (de novo review is not deferential, and noting that judicial review in other immigration contexts, such as removal or asylum, is highly deferential and expressly limited by statute). "Under § 1421(c), the district court has the last word with respect to denied applications, by conducting its own hearing and reviewing the application de novo." *Hovsepian I*, 359 F.3d at 1162. Pursuant to "8 U.S.C. § 1421(c), the district court is required to hold a de novo hearing after the INS denies an application." *Id*. at 1163 n. 16. Thus, "even if the INS is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the INS's findings or conclusions." *Id*. at 1162. (emphasis omitted); *see also Chan v. Gantner*, 464 F.3d 289, 290-91 (2d. Cir. 2006).

The applicable standard of review informs the adjudication of this motion on two grounds. First, Mr. Navarette's argument focuses almost exclusively on USCIS' denial of his naturalization application to argue that USCIS "abused its discretion" in its denial of his naturalization application. In his summary judgment motion, Mr. Navarette faults the March 20, 2009 USCIS decision to affirm denial of his naturalization application in the following ways: (1) USCIS erred to conclude that it can consider evidence outside of the five-year period; (2) the decision "engages in no analysis whatsoever in reaching the conclusion that he is not worthy of the favorable exercise of discretion"; (3) the decision "engages in no analysis as to whether or not one DUI is proof of a lack of present good moral character which would allow them to view conduct outside of the five year window;" and (4) USCIS erred by failing to exercise its discretion to hold Mr. Navarette's naturalization application in abeyance until his probation term expired. Because these arguments are inapposite to this Court's de novo review of Mr. Navarette's naturalization application, and rely on an inapplicable standard of review, this Court will not consider

their merits.[2]

Second, the question presented in this action–whether Mr. Navarette has good moral character to support his naturalization application–is a question of fact. *Hovsepian II*, 422 F.3d at 885; *Yuen Jung v. Barber*, 184 F.2d 491, 497 (9th Cir. 1950) (findings of good moral character are findings of fact). Although both parties move for summary judgment, neither party sets forth the applicable standard of review. According to the well-settled standard of review for summary judgment motions, this Court must decide whether there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where disputed issues of material fact exist, summary judgment is improper. *See, Hovsepian II*, 422 F.3d at 885 (applying Fed. R. Civ. P. 52(a) standard of review to court's decision of good moral character). Because the issue of whether Mr. Navarette has good moral character is a factual issue that cannot be decided as a matter of law under the instant facts, this Court cannot resolve the ultimate issue of whether Mr. Navarette has good moral character in this motion.

This ruling is consistent with the statutory grant of jurisdiction, 8 U.S.C. §1421(c), which *requires* this Court to make findings of fact and conclusions of law in its de novo review of a denial of a naturalization application. Because this Court cannot make findings of fact in a Fed. R. Civ. P. 56 motion, this Court cannot resolve this action as presented.

Summary judgment may be appropriate if adjudication of this action turned on a question of law. *See, Chan*, 464 F.3d at 295-96 (summary judgment appropriate where no genuine issue of material fact exists such as when statutory bar precludes a finding of good moral character); *Abghari*, 596 F. Supp. 2d at 1344 (district court may resolve a pure question of law on summary judgment without bench trial or evidentiary hearing). Here, however, the one legal issue properly presented in this motion is

---

[2] Mr. Navarette further demonstrates his confusion with the applicable procedure when he argues that the "proper course in this case is to remand the application to the Service to allow the original hearing officer to adjudicate the case without the erroneous Carthaginian finding that the application could not be granted because the applicant was on probation and to address the full record." This Court lacks authority to remand an action for further consideration, because 8 U.S.C. §1421(c) plainly indicates what a district court "shall" do. "Significantly, the statute is devoid of any mention of the possibility of remand." *Epie v. Caterisano*, 402 F. Supp. 2d 589, 591 (Dist. Md. 2005). "The Court can only assume that Congress knew what language to include if it intended to grant district courts the option to remand. Here, Congress apparently chose not to do so." *Id*.

inapplicable and, therefore, non-dispositive. USCIS maintains that 8 C.F.R. §316.10(c) prohibits an applicant who is on probation from satisfying the good moral character requirement. Mr. Navarette challenges the application of 8 C.F.R. §316.10(c), arguing that the regulation is an ultra vires violation of the separation of powers. According to the administrative record, Mr. Navarette's 3-year probation term began on December 12, 2006 and was set to expire in December 2009. There is no evidence to indicate that Mr. Navarette is currently on probation, and no party argues that Mr. Navarette continues to be on probation. Because Mr. Navarette is no longer on probation, the regulation prohibiting adjustment during the probation period is inapplicable to this Court's de novo review of whether Mr. Navarette has good moral character. Accordingly, this Court need not address Mr. Navarette's challenge to the regulation.

**Fed. R. Civ. P. 11 Violations**

Mr. Navarette's petition, motion, and response [3] repeatedly misrepresent the law and facts in this action. Each document was signed by Mr. Navarette's attorney of record. Fed. R. Civ. P. 11(b) requires an attorney to certify that:

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument by extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunities for further investigation or discovery.

Under Fed. R. Civ. P. 11, the Court views an attorney's conduct under an objective standard of reasonableness under the circumstances. *Jenkins v. Methodist Hosp. of Dallas*, 478 F.3d 255 (5th Cir. 2007). Mr. Navarette's counsel appears to have violated Fed. R. Civ. P. 11(b)(2) and 11(b)(3), in a number of ways, including:

**1.   Misrepresentations of Fact/Criminal History**

The undisputed facts establish that Mr. Navarette was convicted of two DUIs. Nevertheless, Mr. Navarette consistently and repeatedly argues that Mr. Navarette was convicted of only one DUI. Mr.

---

[3] Mr. Navarette's petition, motion and reply are all nearly identical to his appeal to USCIS. Thus, the same legal memorandum has been recycled and filed on behalf of Mr. Navarette four times without concern for the changing law, procedure, or standard of review in each instance.

7

1  Navarette's counsel frames the issue presented as:

> Is the petitioner able to demonstrate "good moral character" as defined under the Act, during the statutory period requires for a Naturalization application, *based on a 12/12/06 conviction* for a violation of CA Vehicle Code 23152, what is colloquially referred to as a "DUI"–Driving under the Influence.

Pl. Mot., 3 (emphasis added).  This issue ignores the undisputed facts that Mr. Navarette was convicted of two DUIs during the applicable statutory period.  The issue further ignores the domestic violence conviction outside of the statutory period and the fact that Mr. Navarette was on probation during the statutory period.

In his memorandum, Mr. Navarette's counsel completely ignores the second DUI conviction within the relevant statutory period.  See, Pl. Memo, 6 ("The Service decision references *the prior DUI* and a domestic violence case") (emphasis added); Pl. Memo., 7 ("The Decision engages in no analysis as to whether or not *one DUI* is proof of a lack of present good moral character") (emphasis added).  Based on the evidence presented, it is unreasonable objectively and under the circumstances that Mr. Navarette continuously argues that he was convicted of only one DUI during the statutory period.

**2.    Misrepresentations of Law**

The aforementioned misrepresentation of the facts leads Mr. Navarette's counsel to misrepresent the law.  Mr. Navarette's counsel argues that "[a]t the outset it is important to make clear that a DUI is not considered a crime involving moral turpitude." Pl. Mot., 8.  *See also*, Pl. Mot., 9 ("It is not seriously open to dispute that "Drunk Driving" is not a crime of moral turpitude."); Pl. Mot., 9 (federal courts and Board of Immigration Appeals "have all spoken with complete unanimity" that a DUI is not a crime of moral turpitude).  These unsupported statements are incomplete statements of the law.

While a "simple DUI offense" is a not crime involving moral turpitude, a DUI offense committed with the knowledge that one's driver's license has been suspended or restricted because of a prior DUI may be a crime of moral turpitude.  *See, Marmolejo-Campos v. Holder*, 558 F.3d 903, 915 (9th Cir.) (en banc), *cert. denied*, 2009 U.S. Lexis 9129 (2009); *In re Lopez-Meza,* 22 I. & N. Dec. 1188 (BIA 1999)(a person who commits a DUI offense while knowingly driving on a suspended, canceled, or revoked license or by committing a DUI offense while already on a restricted license owing to a prior DUI offense, supports a finding of moral turpitude).  Thus, the fact that Mr. Navarette committed two DUI

Case 1:09-cv-01255-LJO-SKO Document 16 Filed 04/20/10 Page 9 of 9

offenses during the statutory period of time is significant to the legal question of whether his second DUI offense is a crime of moral turpitude.

Pursuant to Fed. R. Civ. P. 11(c)(3), this Court orders Mr. Navarette's attorney to show cause in writing why the conduct described above has not violated Fed. R. Civ. P. 11(b).

### CONCLUSION

For the foregoing reasons, this Court:

1. DENIES the parties' cross-motions for summary judgment; and

2. ORDERS Mr. Navarette's attorney, **no later than April 27, 2010**, to show cause in writing why the conduct described above does not violate Fed. R. Civ. P. 11(b); and

3. SETS a status conference on **May 5, 2010** at 8:30 a.m. in Courtroom 4 (LJO). The parties may appearing telephonically by arranging a one-line call and dialing (559) 499-5680. The parties must file a joint status report no later than **April 28, 2010.** The joint status report must include whether plaintiff Mr. Navarette requests a hearing on the merits and whether the parties intend to present evidence outside of the administrative record.

IT IS SO ORDERED.

**Dated:   April 20, 2010**        /s/ Lawrence J. O'Neill
                    UNITED STATES DISTRICT JUDGE

9